## Eichbaum *against* Irons.

The members of a committee appointed by a political meeting to provide a free dinner for the party are personally liable for the bill.

THIS was an action of *assumpsit*, brought in the District Court of *Allegheny* county, by John Irons against William Eichbaum John D. Davis, William Black, and William D. Darlington.   The case was this.

When the event of the presidential election in 1840 had been ascertained, General Harrison's friends in Pittsburgh and Allegheny, met at the plaintiff's tavern, their late head-quarters, to discuss the propriety of celebrating their success by a public entertainment.   It was resolved that a free dinner should be prepared by the plaintiff to compensate him for the use of his house as a political rendezvous during the canvass, and for the consequent wear of his carpets and furniture; or, as a witness expressed it, to give him a benefit.   The meeting appointed a committee of thirteen to order the dinner and make the arrangements; and another committee, of the same number, to invite the guests.   Mr Black was a member of the committee of arrangements; and the other defendants were members of the committee of invitations.   On the following day, these committees met a concourse of people of the same political stamp, at the same place; and the whole being organized as an original meeting, by placing Mr Eichbaum in the chair, the expediency of the measure was warmly contested, among others, by Davis and Eichbaum, who spoke and voted against it, but eventually succumbed to the majority, by whom the measure was carried anew, and a committee appointed to solicit subscriptions.   At the conclusion, the plaintiff was called in, and directed

[Eichbaum v. Irons.]

to prepare a dinner for 1000 persons, and serve it at Taaffe's ware-house, where 4000 people, of all political parties, subsequently partook of it with wonderful cordiality. Mr Davis, who was dis-satisfied with the measure, called on the plaintiff a few days after the dinner was ordered, stated to him that it would be very diffi-cult to procure money, and requested him to give the matter up; but the plaintiff became excited, and declared that the dinner should go on, though he were to pay for it himself. At this time the provisions had been laid in, and were in the hands of the cook. The defendants alleged that payments had incautiously been made to the plaintiff, without taking receipts; but, as they were unable to prove them, they were compelled to insist that they were not personally liable. The plaintiff, who had assigned his claim in payment of a debt, and was examined without objection, testified that he furnished the dinner on the order of the whig party, and the committee who employed him; that the committee were the only persons he had to look to; that the meeting, at his house, when the order was given, was a public and general one; and that he thought it was the committee who contracted with him. On these facts the court directed a verdict for the plaintiff.

The point of liability was argued here by

*Williams* and *Miller*, for the defendants; and by
*Darragh* and *M'Candless*, for the plaintiff.

The opinion of the Court was delivered by

GIBSON, C. J. — This case is unique, but readily resolvable on principle. It seemed, at first, to resemble the case of a committee sued for the price of meats and wines furnished on its order to a club; but though the defendants acted in obedience to a constitu-ency, it was, unlike a club, which is a permanent body, an intac-tible and irresponsible one. The plaintiff, being examined without objection, testified that he furnished the dinner on the order of the whig party, but that it was to the committee he looked for pay-ment. It is probable that neither he nor they spent a thought on the subject; but it is not, therefore, to be concluded that he agreed to give the dinner for nothing; and the responsibilities of the parties concerned are to be determined on the ordinary principles of the law of contracts. The facts are, that the defendants and others, being a committee constituted by a popular meeting to order and manage a dinner, contracted with the plaintiff to furnish it, and directed the secretary of the meeting to report the proceed-ing to the Tippecanoe Club, an affiliated society, for its appro-bation.

Now it will not be pretended that nobody was responsible to the plaintiff for the order; and, if the defendants were not, who else was? Were they to be viewed as the agents of a club, we would have something palpable to deal with. The question would

[Eichbaum v. Irons.]

be, whether they had become personally liable by having exceeded their authority, or whether they had not contracted on the credit of their constituents. But a club is a definite association, organized for indefinite existence: not an ephemeral meeting, for a particular occasion, to be lost in the crowd at its dissolution. It would be unreasonable to presume that the plaintiff agreed to trust to a responsibility so desperate, or furnish a dinner on the credit of a meeting which had vanished into nothing. It was already defunct; and we are not to imagine that the plaintiff consented to look to a body which had lost its individuality by the dispersion of its members in the general mass. But the question would not depend on the law of partnership, even were such a meeting to be treated as a club; for though Lord ELDON, in *Beaumont* v. *Meredith*, (3 *Vez. & Beat.* 180), and Lord ABINGER, in *Flemyng* v. *Hector*, (2 *Meeson & Welsb.* 179), seemed to have thought that a member of a club is a partner, the notion was exploded by Chief Justice TYNDAL, in the last trial of *Todd* v. *Emly*, cited in *Wordsworth on Joint Stock Companies* 183. Neither is it determinable on the law of principal and agent; for there was no principal. At first, I thought the credit might have been given to the primary meetings on the authority of those cases in which officers have been held liable to have contracted on the credit of the government; but the certainty of payment, in those instances, was so great as to make the moral responsibility of the government the preferable security. Not so the moral responsibility of a populace, which is infinitely weakened by being infinitely divided. In a case like this, the usual presumption of credit is inverted; and, in the absence of evidence to the contrary, the vendor is supposed to have relied on the responsibility of the persons who gave the order. What we have to do, then, is to determine how far each of the defendants was a party to it.

When several dine together at a tavern, each is liable for the reckoning (*Collyer on Partn.* 25, note *w*). But, I take it, they are liable jointly and not severally; for though only one should order, those who approve of it become parties, except where credit is given to one, in exclusion to those who happen to be his guests. This principle is deducible from *Delauney* v. *Strickland*, (4 *Stark. R.* 366). Did the defendants, then, all concur in the order given for the dinner in question? If they did not, the plaintiff cannot recover.

It is not disputed that they were present when the measure was definitively adopted; but it is proved that Davis and Eichbaum opposed it while it was under consideration. What then? They at last submitted to the majority, and made the resolution their own. In *Braithwaite* v. *Skofield*, (9 *B. & C.* 401), a member of a committee who was present at the adoption of a resolution to have certain work done, was held liable to the tradesmen. Every member present assents beforehand to whatever the majority may

[Eichbaum v. Irons.]

do, and becomes a party to acts done, it may be, directly against his will. If he would escape responsibility for them, he ought to protest, and throw up his membership on the spot; and there was no evidence that any of the defendants did so. On the contrary, they all remained till the meeting was dissolved, and the order given. It is true, that Mr Davis afterwards desired the plaintiff to give the matter up; but the dinner was in preparation, and it was too late to retract. Of what importance, then, is the disputed fact of his having partook of the repast with the rest? Had he done so, his final accession would, according to *Delauney* v. *Strickland,* have made him liable despite of other considerations; but he had become irrecoverably liable by the order of the committee, given in his presence, and apparently with his approbation. The defendants have not pleaded the non-joinder of the other members in abatement; and the evidence showed such a joint liability of those who have been sued, as warranted the direction.

Judgment affirmed.