# Beeson *versus* Lang.

The creditors of a corporation selected three of their number, who were elected directors of the company, and charged with the management of its business.   *Held*, that they could not be made liable as partners for supplies furnished them and used in the conduct of the corporation business.

[Beeson *v.* Lang.]

October 5th 1877.   Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1876, No. 238.

Assumpsit by John Watt and W. F. Lang, trading as Watt, Lang & Co., against William Beeson, Robert Hogsett and William Rea.   The declaration was in the common counts.   The defendants in the præcipe, and the writ and *narr.* were described as "doing business as partners and charged as such under the name of the Directors of the Dunbar Iron Company."   Service was had upon Beeson and Rea only.   Watt died after suit brought.   The defendants pleaded no partnership, non-assumpserunt, payment, set-off, with leave, &c., together with special matter set forth in the affidavit of defence.

From the evidence produced on the trial before Collier, J., it appeared that the Dunbar Iron Company, a corporation under the laws of this state, became embarrassed in 1873, and that a meeting of its creditors was held to consider an application for an extension. At this meeting, the creditors agreed to grant an extension, provided three of their number should be elected into the board of directors and given the sole management of its affairs.   The company acceded to this arrangement, and its president transferred stock of the company to the three defendants who had been named by the creditors and who were elected into the board of directors. It appeared that they employed the president as their agent, he still continuing to fill the office of president, and that these three defendants, or a majority of them, from that time, managed the affairs of the company.

The plaintiffs sought to recover, in this action, a balance of the price of merchandise sold, as they alleged, on the individual credit of the three defendants.

The defendants, on the contrary, alleged that the credit was not given to them individually ; and it appeared that on the books of the plaintiffs the goods were charged to the Dunbar Iron Company, and the letters, orders and other communications indicated that the credit was given to the old corporation.

At the trial, the court permitted the plaintiffs, under objection, to examine Mr. Dunlap, who testified that he heard a conversation between Watt, Lang & Co. and Mr. Beeson, and that Beeson said that an arrangement had been made to run the furnace, with himself, Rea and Hogsett as managers, and that they wanted to buy some goods to run the furnace, and whatever goods they got they would be individually responsible for ; that Mr. Lang and Mr. Watt distinctly said, Mr. Watt especially, that he would not trust the Dunbar Iron Company, but would sell Mr. Beeson all the goods he wanted, as he considered him and the others with him responsible. Witness did not know that there was any definite arrangement made at the time of this conversation, but that Mr. Beeson came to the

store and ordered goods several times subsequently, and they were furnished.

It was not shown that Rea or Hogsett knew of this alleged conversation, or that any such statement was authorized by them.

In answer to the defendant's first point, the court charged that this conversation, as testified to by Dunlap, would not warrant a verdict against the defendants in the present action, but in the answers to points and in the general charge, as will be observed below, left to the jury the question whether the plaintiffs "trusted the defendants individually."

The second point of the plaintiffs, which the court affirmed, was as follows :—

That the circumstance that said merchandise had been charged in the books of the plaintiffs in the name of the Dunbar Iron Company, and so billed to said company, is not conclusive evidence that it was sold on their credit, but the jury may determine from all the evidence in the cause as to whether credit was actually given to the said defendants or to the said Dunbar Iron Company as a corporation, and as they find this fact so should the verdict be.

The second and third points of defendants, both of which the court refused, were as follows :—

2. That the defendants are not personally liable for the claim in suit, by reason of their election into the board of directors of the Dunbar Iron Company under the alleged arrangement between the company and its creditors, their election by the board as an executive committee and their acting as such executive committee.

3. That under all the evidence in the case the verdict should be for the defendants.

In their general charge the court said :—

"That if the jury believed that the Dunbar Iron Company was embarrassed and asked an extension, and that the creditors agreed to grant it, and that the defendants were given the exclusive management of the company's affairs, and that the plaintiffs refused to trust the old corporation but trusted the defendants individually, then under this arrangement the verdict should be for plaintiffs."

The verdict was for the plaintiffs for $6856.94, and after judgment the defendants took this writ, alleging that the court erred in the affirmance of the plaintiffs and the refusal of defendants' points, and in the portion of the charge noted.

*M. W. Acheson*, *T. C. Lazear* and *C. E. Boyle*, for plaintiffs in error.—The furnace was not operated for the benefit of the defendants individually, nor by the creditors through the agency of the defendants, and they were simply the agents of the corporation.

A corporation board may appoint agents or a committee to transact the business of the corporation : Ridgway v. Farmers' Bank, 12 S.

& R. 256.    The defendants were at least directors *de facto* and their acts were binding upon the corporation : Angell & Ames on Corp., sect. 287 ; Baird *v.* Bank of Washington, 11 S. & R. 411 ; Cochran *v.* Arnold, 8 P. F. Smith 399.    Where an agent discloses his principal and contracts in his name the principal is liable : 2 Kent 629 ; Sharpe *v.* Bellis, 11 P. F. Smith 69.

The evidence did not sustain the allegation that defendants had purchased the goods on their individual credit, and if the plaintiffs believed that they were selling upon the individual credit of these parties, were they not bound to inquire of Rea, who knew nothing of the alleged arrangement with Beeson, if he was willing to incur this personal responsibility ?

*George P. Hamilton, George Shiras, Jr.*, and *S. Schoyer, Jr.*, for defendants in error.—In Cox *v.* Hickman, 8 House of Lords 268, a case analogous to this, the managers of the works of a company were held personally liable for goods furnished to and used by them as agents for creditors.

The defendant's second point was an abstraction as presented to the jury and was properly refused by the court.    It falsely assumed that the defendant's liability was wholly predicated of the mere formal acts of election into the board and of their acting as an executive committee.    There was evidence beyond this and the court would have erred to have restricted the jury to the facts recited in the point.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 15th 1877.

There is not in all the testimony produced on the trial of this case in the court below a scintilla of evidence upon which the defendants could be held liable as partners.    They were not a committee of the creditors carrying on the business as their agents, and for their exclusive benefit, as was the case in Cox *v.* Hickman, 8 H. of L. 268, nor were they a committee of an indefinite and unknown number of principals, as in the case of Eichbaum *v.* Irons, 6 W. & S. 67 ; but they were a committee of the Dunbar Iron Company—a corporation chartered under the laws of the Commonwealth.    The contracts sued upon were made in the name of the corporation—the charges on the plaintiffs' books were against it— the bills made out and all the business transacted in its name.    On what principle then could they be held personally liable as partners ?    They had not agreed to be partners.    They did not receive any part of the profits, and they did not hold themselves out to the world as partners : Irwin *v.* Bidwell, 22 P. F. Smith 244. Whether they were rightful directors of the corporation could not be controverted in this action.    They were de facto directors and a committee appointed by the board to manage the affairs of the

[Beeson *v.* Lang.]

corporation for its benefit, and to enable it to pay its debts·: Cochran *v.* Arnold, 8 P. F. Smith 399. Even if they had been outside parties appointed by the board of directors to manage its affairs, and acting in its name and on its behalf, it is not easy to understand on what principle they could be held personally liable. An agent who is authorized by a principal—who discloses him and makes a contract in his name—is not personally liable. It is unnecessary, surely, to cite authorities to sustain this position. It is horn-book law. There was manifest error, therefore, in the refusal of the learned judge to affirm the second point of the defendants below—"that the defendants are not personally liable for the claim in suit, by reason of their election into the board of directors of the Dunbar Iron Company, under the alleged arrangement between the company and its creditors, their election as an executive committee and their acting as such executive committee." It is said that this was a mere abstract point, but surely if there ever was a concrete proposition directly applicable to the evidence in the case this was one. In the absence of any evidence of a joint promise which was not pretended or of a partnership between the defendants, which, as we have seen, cannot be maintained, the converse of the proposition was really the only ground upon which the plaintiffs could recover, and the defendants had a clear right to have the jury instructed upon that point. It is clear also that the declarations of William Beeson, either as proved by James Dunlap or J. N. Cooper, were incompetent to fasten liability upon the other defendants. We have seen they were not partners, and his acts and declarations could not make them such or subject them to a contract engagement which there was no evidence that they had authorized. We think, also, that the affirmance of the second point of the plaintiff—and so much of the general charge of the learned judge as instructed the jury—that if the plaintiffs sold the goods to the defendants on their personal credit they were liable, were clearly wrong and calculated to mislead. Concede the fact that the plaintiffs believed that the defendants were personally liable and had sold the goods on their credit, surely that would not make them liable if they had said or done nothing which would have that effect. Yet this seems really to have been the question upon which the learned judge put the case below to the jury—did the plaintiffs trust the Dunbar Iron Company or did they trust the defendants?

On the whole case we are of the opinion that the defendants' third point, "that, under all the evidence in the case, the verdict should be for the defendants," ought to have been affirmed.

Judgment reversed.