## Weaver, Appellant, v. Foundation Co. et al.

Argued January 3, 1933.　Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Archibald T. Johnson,* of *Duane, Morris & Heckscher* and *Glenn C. Mead,* for appellant.—While the adjoining owner is not obliged to support it (the building) when he builds on his own land, he may do so if he chooses, being liable for any damage caused by his negligence: Durante v. Alba, 266 Pa. 444.

The Act of 1893 extends the common law right of lateral support of land in its natural state to land on which buildings have been erected, where excavation is made to a greater depth than ten feet, by requiring the second builder to support both land and building: Waldasz v. Real Est. Co., 206 Pa. 539.

Defendant, if he fails to take reasonable precautions to protect his neighbor's soil, and to preserve it in its natural state, he is liable for the injury both to the land and the superstructure, if the pressure of the superstructure did not cause the land to fall, and it fell in consequence of the failure to take such reasonable precautions: Cooper v. Concrete Construction Co., 231 Pa. 557.

The Foundation Company directed the subcontractors and is not relieved from liability to protect plaintiff's property because the additional defendant may not be its servant within the meaning of the Workmen's Compensation Law: Sipe v. R. R., 222 Pa. 400; Foehr v. Short Line, 40 Pa. Superior Ct. 7.

*Byron A. Milner,* for appellee.—Defendant, the Foundation Company, sublet all the work of excavation and construction to subcontractors, who in doing the work

exercised independent employments, and defendant is not responsible for their negligence: Allen v. Willard, 57 Pa. 374; Silveus v. Grossman, 307 Pa. 272.

The common law rule of lateral support is that the owner is entitled to lateral support for his land in its natural state, and this right does not include such support for the protection of buildings and other structures placed upon it: Wilde v. Minsterly, 2 Rolle Abr. 564; Sharpless v. Boldt, 218 Pa. 372; McGlumpy v. Lentz, 69 Pa. Superior Ct. 36.

Defendant owed no duty to plaintiff which could not be, or in fact was not, delegated to the twenty-five subcontractors on the operation: Silveus v. Grossman, 307 Pa. 272.

Defendant having sublet all the work to subcontractors is not chargeable with negligence in not taking precautions to protect plaintiff's property: Bachler v. Widmyer, 242 Pa. 108; Walton v. Hotel Co., 160 Pa. 3.

Supervision or direction by general contractor of the result of work of independent contractors does not make general contractor liable for negligence of independent contractors: Simonton v. Morton, 275 Pa. 562; Kelly v. R. R., 270 Pa. 426; Colleoni v. Delaware & Hudson Co., 274 Pa. 319.

Opinion by Mr. Justice Simpson, February 1, 1933:

The 1437 Spruce Street Corporation, hereinafter called the owner, having title to a property at the northeast corner of 15th and Spruce Streets, in the City of Philadelphia, caused an apartment house to be erected on it. Plaintiff owns and occupies a residence on the adjoining property to the east. Claiming that it was seriously injured during the construction of the apartment house, and that defendant was responsible therefor, plaintiff brought the present suit. He recovered a verdict, but the court in banc entered judgment for defendant non obstante veredicto, and therefrom the present appeal was taken. The judgment is right.

The apartment house was erected under the following circumstances: The owner had its architects prepare plans and specifications for the construction, and then entered into an agreement with defendant, by which the latter, "as agent for the owner in executing the work ......provided for in the above mentioned plans, specifications and details......shall cause the work to be executed in a prompt, efficient and workmanlike manner;" defendant to "furnish without charge other than the [specifically stated gross] compensation herein provided for, its business and purchasing system, constructive skill, experience and organization, and generally its ability to organize and equip the work with experienced men as well as to properly direct the same." It further provided that defendant should, "subject to the approval of the owner and for its account, place all subcontracts and purchase all materials, supplies, etc., required in connection with the work, and shall approve all bills and accounts for same for prompt payment by the owner"—all the payments of every kind required to be made in the course of construction of the apartment house to be paid by the owner. It will be noticed this agreement does not provide for defendant to do any of the actual work of construction, either by itself or through subcontractors; that the real relation between the owner and defendant was not that of owner and contractor, but was that of owner and superintendent, defendant acting, in the matter of the construction, in that capacity only.

The plan thus provided for was carried out. With "the approval of the owner, and for its account," defendant made various subcontracts for specific portions of the work of construction, the aggregate of said contracts embracing all the work needed in the erection of the apartment house. This imposes no liability on defendant: Bachler v. Widmyer, 242 Pa. 108. Each of these subcontracts was executed by defendant as "Agent for 1437 Spruce Street Corporation [Owner] by W. W. Loeb." All the work performed in the course of the con-

struction was done by these subcontractors, and none of it by defendant. The only employee defendant had on the work was a superintendent, who did not interfere with the method of performance by the subcontractors, save to see that the work was completed in accordance with the "plans, specifications and details" prepared by the "owner's architects," and, as expressly authorized by the contract, to require the discharge of any employee "deemed by the contractor to be incompetent, careless or a hindrance to the work" generally. Whether any employee was discharged, because of this provision, does not appear, but, in any event, out of these matters defendant would incur no personal liability: Miller v. Merritt, 211 Pa. 127.

It follows that if defendant is to be held liable, it must be solely because of its personal wrongful acts: Berry v. Vantries, 12 S. & R. 89, 93; Beeson v. Lang, 85 Pa. 197, 201. There was no employee of defendant working on the building, and hence the doctrine of respondeat superior could not be applied. Even if it should be alleged that defendant did not select efficient subcontractors, or properly superintend the work of construction, its responsibility therefor would be only to the owner; for, quoad the matter of superintendence, it owed no duty to plaintiff. "Where an agent has authority to employ subagents, he will not be liable for their acts or omissions, unless in their appointment he is guilty of fraud or gross negligence, or improperly coöperates in [their wrongful] acts or omissions:" Harrison v. Van Gunten, 15 Pa. Superior Ct. 491.

If, under the facts above set forth, plaintiff was injured by reason of the way any of the subcontractors did their work, plaintiff's remedy would be against them, for they were independent contractors. As said by us in Simonton v. Morton, 275 Pa. 562, 569: "There necessarily must be a certain control by contractee of all undertakings such as the one we are considering, otherwise he could not safeguard himself as to the satisfactory ac-

complishment of the work. 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract.' ...... A reservation of the right to supervise and inspect the work during performance does not make the contractor a mere servant, where the mode and means of performance are within his control: 14 Ruling Case Law 69...... 'The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employee is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen [as was the case with every subcontractor on this operation] is practically decisive of his independence:' 14 Ruling Case Law 71." If, however, these subcontractors should not be held to be independent contractors, this would not render defendant liable to plaintiff, in the absence of express wrongdoing on its part, for their contracts were with the owner, defendant appearing in the transaction only as its agent.

What has been said practically disposes of this appeal, and it remains only to apply the principles stated to the concrete contentions of plaintiff. Speaking generally, there are three classes of injuries to plaintiff's property, of which he complains: (1) An injury to the roof by articles falling or being thrown on it in the course of construction of the apartment house; (2) An injury to his property generally because of interference with the means therein provided for carrying off surplus water; and (3) A failure to protect the brick building on plain-

tiff's property, so that it and the adjoining earth settled, causing injury, especially to the rear building itself. For none of these things, however, was defendant responsible to plaintiff.

As to the first two, since defendant was not to do, and did not in fact do any of the actual work of construction, and all these matters arose out of and in the course of construction, those who did that work must necessarily be responsible for whatever injury occurred. Moreover, this is especially provided for, the contracts between defendant, as agent for the owner, and the subcontractors, specifically providing that "The subcontractor is to be fully responsible and repair and place in first-class condition, at his expense, all damage done to property...... in the performance of this contract." If it be said that the damage complained of would not have occurred if defendant had properly superintended the work, it need only be said again that, for this neglect, if there was one, defendant is responsible only to the owner. Indeed, the evidence in this case is barren of proof as to who caused those injuries. We are asked to infer that it was done by one or more of the subcontractors, solely by reason of the fact that it occurred while they were working on the apartment house.

On these two questions, plaintiff points to the following provisions of the specifications for the construction of the apartment house, and alleges liability by reason thereof: "The General Contractor [defendant] must lay out the work and be responsible for its correctness. He must watch the progress of the work without notice from any one...... He must be responsible and make good to the architects' satisfaction all defacements and injuries to neighboring properties done by him or men in his employ, or through his or their negligence, or to any work upon the building not in this contract, if done by him or men in his employ, or through his or their negligence. He must use, provide and make all proper, necessary and sufficient precautions, safeguards and pro-

tections against the occurrence or happening of any accidents, injuries, damages or hurt, to any person or property, during the progress of the construction of work contracted for, and he must be responsible for and indemnify and save harmless the owner from the payment of all sums of money by reason of any such accidents, injuries or hurts that may happen or occur through him or men in his employ, or through his or their negligence." Aside from all other considerations, it is so plainly evident that these provisions apply only to the relation between defendant and the owner, that nothing further need be said in regard to them.

The third contention, which is the important one on this appeal, must also be decided against plaintiff. The apartment house was to be built on the entire front of the owner's property, running up to plaintiff's property. His residence also occupied the entire front of his lot, the west wall thereof, extending back for sixty feet, being a party wall—that is, partly built on each property. North of that, plaintiff's building receded four feet, and then continued of that reduced width back to Manning Street. The four feet not built upon constituted plaintiff's side yard. In constructing the apartment house, its west wall for the sixty feet in depth was the existing party wall above referred to, and in relation to it no substantial complaint is made. North of the party wall, however, and east of the party line of the owner was the above mentioned side yard of plaintiff. The plan of the apartment house provided for a curtain wall along that side yard, that is, a wall which came up to the common line of the two properties, but not encroaching on plaintiff's property, as would have been necessary had this part of the wall been a party wall.

In excavating along this rear line, the owner had cast upon it the legal duty of supporting the earth of plaintiff's property in its natural state, but not of protecting any building erected on it. That duty was on plaintiff himself: Cooper v. Altoona Concrete, etc., Co., 231 Pa.

557; Durante v. Alba, 266 Pa. 444. "The right of lateral support which is absolute for land in its natural state, extends no further than to the avoidance of negligence as to land encumbered with buildings:" Sharpless v. Boldt, 218 Pa. 372, 377; Workingman's Savings Bank & Trust Co. v. Pittsburgh, 284 Pa. 248. Of course, the owner, or those acting for him, might themselves have undertaken to support the adjoining building, and, if they had, the owner would have been responsible for any damage to it resulting from their negligence: Durante v. Alba, supra. The latter case was one where the support attempted was of plaintiff's building directly, there being no land in any way affected, while here, as will hereinafter appear, it was only of the soil of the yard, and the contention is that, as plaintiff's building was injured, it must have been because the soil was not properly supported. It is not necessary to consider whether or not this was or could have been so in the present case; nor whether or not plaintiff, knowing that the excavation was going on, was bound, in the absence of an agreement otherwise, to protect his own building. No matter how those questions would be decided, no liability of this defendant would arise.

What actually occurred was this: One of the subcontractors agreed that he would "perform all the work ......[of] excavation, disposal, shoring and sheeting, back-filling and underpinning for the erection and construction" of the apartment house, and would "be fully responsible and repair and place in first-class condition, at his own expense, all damage done to property, streets or sidewalks in the performance of this contract." When the work reached the stage where it became necessary to shore up plaintiff's yard, so that the earth thereof would not cave in while the curtain wall was being built, defendant's superintendent on the job saw plaintiff, and this is what the latter himself says occurred: "Q. Now, was any request made by the defendant to enter your side yard and make use of it at any time? A. There

was, after they had started excavating. Mr. Boyne said that he would like to put in sheathing so as to protect the side yard, protect that ground, that side yard, from slipping. I gave him permission to do so...... Q. What reason did he give for wanting to come upon your lot, and do some work in connection with the apartment house building? A. He said it was necessary to support that side yard, to put in that sheathing, so that they could support it and keep it from falling in." It will be noticed that this refers only to the support of the yard, not the building. Following the permission thus obtained, defendant, as agent for the owner, gave the lines at which the sheathing should be placed, and then plaintiff says "there was sheathing driven in and considerable of the ground taken out for the sheathing to be put in." Plaintiff alleges "that the cause of the settlement of the building [following the construction of the sheathing] was water getting behind the sheet piling and percolating through for a series of weeks and wasting out the earth." Defendant had nothing to do with the actual performance of that work; it was all done by the subcontractor who had the contract above quoted.

It seems to be further contended that because much work was done on plaintiff's property in a vain attempt to satisfy him, this proves a liability to make good all the damage, and, as the building had not been fully repaired, the present suit was properly brought and must be sustained. The incorrectness of this contention is evident as regards anyone, and, as respects plaintiff, is readily made clear. The facts are these: Plaintiff complained of the injury, and the architect for the owner had an interview with him. Following this, the owner directed defendant to give to the subcontractor an order to remedy the cause of the complaint, the cost of so doing to be paid by the owner. This course was pursued, the subcontractor did the work at an expense of some $5,000 and the owner paid the bill. Of course this cannot affect defendant in the slightest degree.

The judgment of the court below is affirmed.