## Gotalkras et ux. v. Validzich et al.

14

*C. E. Brockway* and *Leo H. McKay*, for plaintiffs.

*Thomas H. Armstrong*, for defendants.

ROWLEY, P. J., March 16, 1939.—Plaintiffs filed their bill in equity to recover upon two judgment notes. One of said notes was made April 25, 1935, in the sum of $400, payable 60 days after date to the First National Bank in Sharon, Pa., and is signed:

"National Croatian Society of the United States of America Branch 126

> A. G. Zuback, President
> Jack Kulusich, Vice Pres. (Seal)
> J. M. Bacich, Secretary
> Jerry Skendrovich, Treas. (Seal)"

This note bears the following endorsement:

> "Face of note  400.00
> Int.  21.00
> Filing chge.  2.05
> ———
> 423.05

"For value received we hereby sell assign transfer and set over all our right, title and interest in the within note without recourse to Adam Gatalkras or Magda Gatalkras.

First National Bank in Sharon, F. C. Shively Cashier"

The other note was made February 21, 1935, in the sum of $1,600, payable six months after date to Mr. or Mrs. Adam Gotalgras of Sharon, Pa. This note is signed

as above. These notes are accompanied by the following papers:

*Exhibit 5*
"Lodge 126 Slavno Ime Isus"
Croatian Fraternal Union of America and
Croatian Home Association
Farrell, Pa.

"On meeting held by members of Croatian Home and Lodge #126 of Croatian Fraternal Union at the Croatian Home, Sunday, September 16th, motion was made by Nick Back, seconded by Anten Dzepina: That officers of Croatian Home and Lodge #126 of Croatian Fraternal Union: Anthony G. Zuback, president, Jack Kulusich, vice-president, Jack M. Bacich, secretary and Jarry Skendrevich, treasurer, make loan with local bank, in the amount sufficient to transact business of Croatian Home. Therefore officers announced that $750.00 (Seven Hundred and Fifty – – – no–100 – – – Dollars) will be sufficient. Said motion was passed and legally in record registered.

"On meeting of officers of Croatian Home and Lodge 126 of Croatian Fraternal Union, held at Croatian Home, Saturday, 22 of September at the Croatian Home, motion was given by Jack Bacich, secretary, seconded by Jerry Skendrovich, treasurer, that Loan of $750.00 (Seven Hundred Fifty - - no - 100 Dollars) be made with First National Bank at Sharon, Pa.

"That the above motions was duly registered in our society record, I hereby certify with my hand and seal of society. Secretary, J. M. Bacich"

*Exhibit 7*
"Lodge 126 Slavno Ime Isus"
Croatian Fraternal Union of America and
Croatian Home Association
Farrell, Pa.
*"Copy"*

"At a meeting held in Croatian Home, Sunday, February 17th, 1935, by the members of Croatian Home (205

present) Brother J. M. Bacich, secretary, and Brother Anthony G. Zuback, president, the statement was made that some of the bills are past due, and that the creditors are urging and threatening with suit to collect them. The motion was made by J. M. Bacich, and seconded by Matt Butorajac, that the Committee of the Croatian Home: Anthony G. Zuback, president, Jacob Kulusich, vice-president, J. M. Bacich, secretary, and Jerry Skendrovich, treasurer, be authorized to make a loan and pay such bills, and that the loan be made from some of our members or friend.

"Motion was carried by unanimous vote.

"At a meeting held at the Croatian Home, February 18th, 1935, by the Committee of the Croatian Home: Anthony G. Zuback, president, Jacob Kulusich, vice-president, J. M. Bacich, secretary, Jerry Skendrovich, treasurer, authorization given by the members of Croatian Home of February 17th, 1935, was discussed. After a thorough discussion, Secretary Bacich made announcement that Sixteen Hundred Dollars ($1,600.00) will be necessary to cover past due bills for which creditors are demanding payment. Anthony G. Zubach, president, announced that in accordance with the authority of our members he has found a loan from Mr. and Mrs. Adam Gotalkras of Sharon, Pennsylvania, in the amount of $1600.00 to the Croatian Home.

"The motion was made by Jerry Skendrovich, treasurer, seconded by Jack M. Bacich, secretary, that a loan in the amount of $1600.00 be made from Mr. and Mrs. Adam and Magda Gotalkras, and that a judgment note for six months be given to them. Motion was carried by unanimous vote.

"That this is a true record of our minutes I hereby certify.

A. G. Zuback, president J. M. Bacich, secretary."

Defendants herein are the officers and some of the members of Lodge No. 126 Slavno Ime Isus, of the Croatian Fraternal Union of America (formerly known as

National Croatian Society of the United States of America), and are named as defendants representing themselves and all other members of said lodge. The lodge is an unincorporated association and is a branch lodge of the Croatian Fraternal Union of America, the latter being an incorporated beneficial society which provides death and sick benefits to the members of its various branches or lodges who make the payments required for such benefits through the officers of the local branch or lodge to which they belong:

Plaintiffs' bill does not urge individual personal liability of defendants. The prayer is for a decree directing payment from funds in the lodge treasury, and in default thereof, an order for sale of the joint real estate.

Defendants' answer denies that the notes were authorized by action of the lodge for the reason that in lieu of previous notice of the purpose, the meeting was without power to adopt such resolutions. The answer also denies that the proceeds of the notes were received by the treasurer of the lodge and applied to payment of debts incurred by the lodge and its membership.

The answer admits that defendants are the present officers, trustees, and some of the members of said lodge, and that the officers of said lodge are Paul Validzich, president; Ivan Bronich, vice president; Mike Golub, secretary; Marko Validzich, recording secretary; J. M. Golub, treasurer; and James Golub, Janko Fabijancic, and Frank Petrinac, trustees.

Defendants deny that they voted in favor of the authorization of the officers to borrow the said amounts in the name of the lodge. (The answer denies that defendants were present at any meeting when the same was *regularly* authorized.)

Defendants say that the Croatian Fraternal Union, or its local lodge, is not permitted under its laws or the laws of the State to conduct businesses for which it is not incorporated; that the Croatian Fraternal Union is incorporated for beneficial and educational purposes, that

activities for which debts herein alleged were incurred are prohibited; that the alleged debts were incurred in the operation of a beer garden or night club, which was not legally authorized and was opposed by a large number of members.

Defendants conclude that liability upon said notes is restricted to the members who favored or were instrumental in obtaining the loans.

### Findings of fact

1. On June 12, 1912, . . . Florence Clark, single, conveyed to "Odsjek Br. 126, N. H. Z., Odsjek Br. 187 N. H. Z. and Odsjek Br. 342 N. H. Z.," being three lodges of the National Croatian Society of the United States of America, located at Farrell, Pa., the following premises. . . .

2. Upon the above-described land there was erected by the members of the said three lodges, named as grantees, a two-story brick building, called the "Croatian Home", for use as a lodge, and for social and rental purposes and for the benefit of themselves and future members of said local lodges and of any other lodge into which they might thereafter merge. The building contains five rooms and a dance hall.

3. Prior to September 16, 1934, the three lodges named as grantees in the aforementioned deed merged into one lodge under the name "Lodge No. 126 Slavno Ime Isus, of the Croatian Fraternal Union of America," the members of which, by virtue of their membership, are the beneficial owners of the above-described real estate, known as the Croatian Home.

The Croatian Fraternal Union of America is an incorporated beneficial society which provides death and sick benefits to the members of its various branches or lodges.

Lodge No. 126, Slavno Ime Isus, is a branch lodge of the Croatian Fraternal Union of America.

4. Periodical dues, in an amount dependent upon the age of the member, were paid to the treasurer of the local lodge and by him remitted to the treasurer of the National or parent lodge. Sick and death benefits were payable to the members by the National lodge.

5. In addition to the dues payable to the National lodge, social dues of 10 cents were payable by the members for use by the local lodge.

6. The management of the building was conducted by the officers of the lodge. Annually the lodge prepared or approved bylaws for the conduct of the "Home". The bylaws adopted to govern the home for the year 1934 authorized the officers to repair or remodel the home and to do whatever they believed to be necessary and beneficial for the home. Records and accounts of the operation of the home were kept separate from the lodge accounts. The term "Home" was applied both to the building itself and to those transactions and activities which were not a part of the insurance or beneficial aspect. The so-called home association is not incorporated.

For some years previous to 1933 (except during the prohibition era), a bar room was operated in the "Home". In 1933 the bar room was leased to others. In 1934 the bar room was repaired and remodelled and was operated under the direction of the lodge. These officers were re-elected for the year 1935, and the bylaws adopted as to management of the home for 1934 were approved for the year 1935, and operation of the bar room was continued.

Members of the lodge had knowledge that the bar room was being operated by the officers of the lodge during the years 1934 and 1935.

Reports upon operation of the "Home" were periodically made to the lodge, by the lodge officers. The accounts of the "Home" were audited periodically, and the audit submitted to the lodge meeting.

7. The official stationery of the lodge bore the title "Croatian Fraternal Union of America and Croatian Home Association".

8. Sections 465 and 466 of the bylaws of the Croatian Fraternal Union of America provide:

"Section 465. At any regular meeting, the members of the lodge may, by a majority of the votes of those present, allow the payment of regular assessments out of the lodge treasury, or the fees of the lodge officers and other lodge expenses, or the unpaid dues of any member.

"Section 466. The lodge and its officers are forbidden to pay out of the lodge treasury any sum except for the purpose provided in section 465, the amount of which shall not exceed $25, but in such case the members of the lodge must pass a resolution by a majority vote of those present, and put the matter before the members for voting at the next regular meeting. If the amount exceeds $25, a special meeting shall be held and a notice of the same published in the official organ, etc."

9. On September 16, 1934, the resolution set forth in the first paragraph of plaintiffs' exhibit no. 5, supra, was adopted by a majority vote of the members present. This meeting was not called after the notice prescribed by section 466 of the bylaws of the lodge. All the defendants named, except Frank Petrinac, were present at this meeting.

10. On September 22, 1934, the resolution contained in the second paragraph of plaintiffs' exhibit no. 5 was adopted by the officers of Croatian Home and Lodge 126 of Croatian Fraternal Union.

11. On February 17, 1935, the resolution set forth in the first paragraph of plaintiffs' exhibit no. 7, supra, was adopted by a majority vote of the members present. This meeting was not called after the notice prescribed by section 466 of the bylaws of the lodge. All the defendants named, except Frank Petrinac, were present at this meeting.

12. On February 18, 1935, the resolution contained in the second and third paragraphs of plaintiffs' exhibit no. 7 was adopted by the officers of Croatian Home and Lodge No. 126 of Croatian Fraternal Union.

13. The note for $400, dated April 25, 1935, payable to The First National Bank in Sharon, assigned to plaintiffs herein, is a renewal for the unpaid balance of the note for $750 dated September 16, 1934, payable to The First National Bank. The amount due on said renewal note is $400, with interest thereon from June 24, 1935.

14. The amount due on the note made by the officers of National Croatian Society under date of February 21, 1935, in the sum of $1,600, payable to Mr. or Mrs. Adam Gotalkras, is $1,600 with interest from its date.

15. The proceeds of the $750 were deposited in the name "The Croatian Home" and were thereafter applied by the officers of the lodge and the home to payment of indebtedness incurred in the maintenance and operation of the "Home".

16. Eleven hundred dollars of the proceeds of the $1,600 note was applied by the officers of the lodge and home in payment of assessments due to the parent or National lodge under benefit certificates held by members of Lodge No. 126. The balance of the proceeds was used in maintenance and operation of the "Home".

17. All members of Lodge No. 126 are ipso facto members of the so-called "Home Association".

## Discussion

The Act of April 28, 1876, P. L. 53, sec. 1, 40 PS §1015, provides:

"That members of lodges of the order of Odd Fellows, Knights of Pythias and other organizations paying periodical or funeral benefits, shall not be individually liable for the payment of periodical or funeral benefits or other liabilities of the lodge or other organization, but that the same shall be payable only out of the treasury of such lodges or organizations: *Provided,* That the provisions of this act shall only apply to unincorporated associations".

But plaintiffs are seeking only recourse against the joint property owned by certain individuals who are the members of an unincorporated association.

"By the act of June 16, 1836, the several courts of common pleas are given the supervision and control of unincorporated societies or associations and partnerships. This jurisdiction clearly comprehends matters relating to such organizations as the present one. Equity will reach not only a settlement of controversies, but has power and process to enforce its decrees. . . . Thus, though the treasury alone shall respond for a debt found to be due, those in control of the treasury may be compelled to see that the treasury meets its liabilities by payment": Fletcher v. Gawanese Tribe, etc., 9 Pa. Superior Ct. 393.

Upon a claim against an unincorporated association, "a plain remedy remains in equity, where suit may be brought against some of the members as representing themselves and all others who have the same interest . . . the chancellor can be moved to compel the defendants to see that the treasury of the association pays the claim": Oster v. Brotherhood of Locomotive Firemen & Enginemen et al., 271 Pa. 419, 421; Maisch v. Order of Americus, 223 Pa. 199; Wolfe v. Limestone Council No. 373, 233 Pa. 357.

It will be helpful to bear in mind that in Humphrys v. Republican Central Campaign Committee et al., 320 Pa. 353, and Bloom v. Vauclain et al., 329 Pa. 460, the courts were dealing with situations entirely different than the one here involved. In both of those cases the effort was to impose individual, personal liability. Furthermore, the associations there involved were loosely-formed, voluntary associations, whereas, in the instant case, whether we consider the lodge or the "Home" we find an association in a substantial form, composed of a selected membership, the usual officers, with bylaws for its government, and provision for stated meetings.

Defendants contend that the proceeds of the notes in question were applied to repair or conduct the bar room, and that such activity was contrary to the laws of the Croatian Fraternal Union. Defendants further say that if there be liability it can attach only to the members of

the "Home" as such, and that in no event can such liability attach to the real estate which, they say, is owned by the membership of the lodge.

In our opinion, the question is whether the membership is liable (irrespective of the terms "lodge" and "Home" which in contemplation of law have only a fictional existence). If the membership is liable—to the extent of the joint property—it is immaterial whether their ownership is by reason of membership in the lodge or membership in the "Home". The joint property is owned neither by the lodge nor the home, but by the members who constitute the association. It is undisputed that persons who were at the time the officers of the lodge and of the "Home" executed the notes in question... Those persons applied a part of the proceeds of these notes to pay indebtedness incurred in the repair or conduct of the bar room. Whose agents were they? The members of the lodge did not become liable ipso facto by reason of their membership. Any liability of the members who did not directly participate must be based upon principles of agency, and it must be shown that they, as principals, either authorized the transaction or held themselves out as being responsible for the obligation incurred. This cannot arise by inference from the mere fact of membership, but must be based on actual authorization, assent, or ratification: Bloom v. Vauclain et al., 329 Pa. 460.

In Ash et al. v. Guie, to use, etc., 97 Pa. 493, it was held that a club and its committee must stand on the ground of principal and agent, and that the authority of the committee depends on the constitution of the club, which is to be found in its own rules.

In our opinion, this is not to be interpreted as ruling that liability of members for acts of the officers of an incorporated association is limited to such acts as are expressly authorized by the bylaws. If the acts in question are authorized by the bylaws, then the member is bound by reason of his membership, but if the bylaws are silent upon the matter then the liability of the members is to be

determined on the principles of agency. The questions then arise: Did the members expressly or impliedly authorize the acts? Did they ratify them? Did they accept the benefits with knowledge of the facts?

In Ash et al. v. Guie, to use, etc., supra, p. 500, the court makes this significant declaration:

"But those who engaged in the enterprise [erection of a building for an unincorporated association] are liable for the debts they contracted, and *all are included in such liability who assented to the undertaking, or subsequently ratified it.* . . . A member who subsequently approved the erection or borrowing could be held on the ground of ratification of the agent's acts." (Italics supplied.)

It cannot be seriously doubted that the members knew in the latter part of 1933 that the bar room was to be repaired and that it was to be operated by the officers of the lodge as part of the "Home" activities. Defendants contend, however, that they opposed the operation of the bar room; nevertheless, the fact is that their officers continued to operate the bar in 1934 and 1935. If we assume that defendants opposed the operation of the bar room, and further that they opposed the resolutions authorizing the notes, what is their status now?

There is nothing in the character of this association which requires the application of a more lenient rule as to the liability of the members (to the extent of the joint property) than is applied in the case of a voluntary, loosely-formed organization.

On the contrary, a more strict rule is warranted for the reasons hereinbefore stated.

Eichbaum v. Irons, 6 W. & S. 67, 69, was a suit against an individual, who was a member of a political committee, to recover the cost of a dinner provided for friends of General Harrison upon the latter's election to the presidency.

A large meeting of the supporters of Harrison was presided over by Eichbaum the defendant. The latter spoke and voted against the dinner.

"It is not disputed that they [defendants] were present when the measure was definitively adopted; but it is proved that Davis and Eichbaum opposed it while it was under consideration. What then? They at last submitted to the majority, and made the resolution their own. In *Braithwaite* v. *Skofield*, (9 B. & C. 401), a member of a committee who was present at the adoption of a resolution to have certain work done, was held liable to the tradesmen. Every member present assents beforehand to whatever the majority may do, and *becomes a party to acts done*, it may be, *directly against his will.* If he would escape responsibility for them, he ought to protest, and throw up his membership on the spot; and there was no evidence that any of the defendants did so. On the contrary, they all remained till the meeting was dissolved, and the order given. It is true, that Mr. Davis [one of the defendants] afterwards desired the plaintiff to give the matter up; but the dinner was in preparation, and it was too late to retract. Of what importance, then, is the disputed fact of his having partook of the repast with the rest? *Had he done so, his final accession would,* according to *Delauney* v. *Strickland, have made him liable* despite of other considerations; but he had become irrecoverably liable by the order of the committee, given in his presence, and apparently with his approbation." (Italics supplied.)

If we consider the matter solely as a question of defendants' liability for indebtedness incurred in connection with the bar room—defendants contend the entire indebtedness was thus incurred—we must examine the conduct of defendants to determine whether they impliedly authorized or assented to what was being done. In such examination defendants may not have the benefit of a prohibition in the charter or bylaws not brought to the attention of nonmembers with whom they dealt, especially where the members have consistently ignored such prohibition. The name "Croatian Home" or "Home Association" or "Home" did not require persons dealing therewith to examine the bylaws of The Croatian Fraternal

Union. The parent lodge had the power to limit the activities of the local lodge and in a contest between them the bylaws should govern. Likewise, as between the officers and the members of the lodge, the former are similarly limited in their authority. If, however, the membership holds out their officers as having authority, the members are bound, notwithstanding a provision to the contrary in the bylaws.

The sections of the bylaws prohibiting payment from the lodge treasury of a sum in excess of $25 except upon approval of a meeting held after due notice has no application, for we are not concerned with the manner or purpose of disbursement. Our inquiry is as to the manner in which the funds were obtained. (The proceeds of the first note were deposited in the bank to the credit of "The Croatian Home". Of the second note, $1,100 was converted into a cashier's check which was remitted to the parent lodge. There is no evidence as to the deposit in a bank of the balance of the proceeds of the $1,600 note. The books of the treasurer do record the transaction.)

The bylaws adopted by the lodge late in 1933 for government of the "Home" during the year 1934 authorized the officers to repair or remodel the "Home" and to do whatever they believed to be necessary and beneficial. At the close of the year 1934 these officers were reëlected and the bylaws of 1934 readopted for 1935, after the membership must be presumed to have had knowledge of the operation of the bar room.

It is altogether likely that many of the defendants disapproved the administration of their officers during 1934 and 1935. At least, it can be said that many of the members opposed the manner in which the affairs of the "Home" were conducted. Nevertheless, they took no effective steps to prevent what they now term unauthorized acts of their officers.

Frequent reports of the operation of the "Home" were made to the lodge meetings, and periodical audits were submitted. It may well be that such reports were neither

accurate nor truthful, yet defendants failed to avail themselves of the remedy which the law afforded them.

The members of an unincorporated association may not sit idly by while their officers engage in unauthorized acts, receiving the benefits therefrom, and subsequently repudiate the authority of its officers when the transactions are no longer profitable: MacGeorge v. Chemical Mfg. Co., 141 Pa. 575.

It is doubtful that the proceeds of the notes in suit were applied for the purposes stated in the resolutions. We think, however, that circumstance does not relieve defendants. There was no obligation upon the payees to see to the application of the proceeds. The members selected their own agents and they must be bound by their delinquencies, if any.

It is not necessary, however, to predicate liability (to the extent sought) upon the ground of implied agency only. There is clear evidence of affirmative action of the membership.

The resolutions, supra, constitute express authorization to the officers to obtain the loans upon the joint credit of the persons who constituted the association. Defendants do not deny that they were present when the resolutions were adopted, but they assert that they opposed the undertaking and voted against the resolution. In our opinion, the full membership became bound by the majority vote, particularly in view of their apparent assent and their failure to take appropriate steps to make their dissent effective.

### Conclusions of law

1. The court has jurisdiction to inquire into the merits of plaintiffs' claim and, if same be well founded, to order payment.

2. The debt evidenced by the note payable to plaintiffs, bearing date April 25, 1935, for $400 with interest, is a valid obligation and is due and owing by the members of Lodge No. 126, Slavno Ime Isus, Croatian Fraternal

Union of America, to the extent of their interest in and ownership of the Croatian Home.

3. The debt evidenced by the note payable to plaintiffs, dated February 21, 1935, for $1,600 with interest, is a valid obligation of and is due and owing by the members of Lodge No. 126, Slavno Ime Isus, Croatian Fraternal Union of America, to the extent of their interest in and the ownership of the Croatian Home.

4. The amount due plaintiffs on said debts is $2,514 with interest upon $2,000 from January 25, 1939.

5. The assets of defendants and other members of the said lodge represented by their ownership of the Croatian Home, including the funds in the bank account in the name of the Croatian Home, and the real estate referred to as the Croatian Home, are available for the payment of the said claim of plaintiffs.

### Decree

And now, March 16, 1939, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. Defendant, J. M. Golub, treasurer of Lodge No. 126, Slavno Ime Isus, of the Croatian Fraternal Union of America, and, by virtue thereof, treasurer of the Croatian Home, is hereby directed to pay the costs of this action and to pay to plaintiffs Adam Gotalkras and Magda Gotalkras their claim of $2,514, with interest on the $2,000 from January 25, 1939, from the funds in his hands as treasurer of the Croatian Home, to the extent that said funds are sufficient for said purpose; and if they be insufficient, he is directed to proceed, by assessment or other equitable means, to collect from the members of the said lodge sufficient funds for the said purpose, notifying each member of the proportionate amount he is required to pay; and defendants who are members of said lodge are hereby directed to pay to the said treasurer each his proportionate amount upon receiving such notice.

2. If said costs and claim shall not be paid in full in 60 days from the date of the final decree herein, plaintiffs may present their petition for an order directing sale of the real estate hereinbefore described.

3. The prothonotary is directed to enter the foregoing decree nisi and give notice to the parties or their counsel of record of the entry of the decree.

4. If no exceptions be filed thereto within 10 days from the entry thereof, the foregoing decree be entered as the final decree by the prothonotary as of course.